[L. A. No. 13611. In Bank.—June 1, 1933.]

BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association), Respondent, v. JOSE FIGUEROA et al., Appellants.

282

Zach Lamar Cobb and Earl A. Littlejohns for Appellants.

Freston & Files for Respondent.

THE COURT.—This proceeding is a companion case on appeal to *Bank of America National Trust & Savings Association* v. *California Savings & Commercial Bank et al.*, L. A. No. 13645, *ante*, p. 261 [22 Pac. (2d) 704], this day decided, which involves an appeal from a judgment of the Superior Court of the County of San Diego. The appeal in the case herein, L. A. No. 13611, is taken from a judgment of the Superior Court of Los Angeles County.

As indicated in our opinion in proceeding L. A. No. 13645, *ante*, p. 261, the action in the Superior Court of the County of San Diego was tried on the sole issue of whether the claim of Figueroa and Brittingham and the Bank of America for

$27,674.44 against the California Savings & Commercial Bank was a general claim, or a preferred claim to be paid in full from the cash in its vaults when it closed on July 23, 1930. It was stipulated in said case that any judgment against the insolvent bank should be a joint judgment in favor of Figueroa and Brittingham and the Bank of America, and that all issues between them *inter se* should be · dismissed without prejudice. To try said issues the Bank of America filed a separate suit in the county of Los Angeles against Figueroa and Brittingham. From the judgment in favor of the Bank of America in said action Figueroa and Brittingham prosecute this appeal.

By the complaint in the case herein the Bank of America sued to recover from Figueroa and Brittingham the balance of $9,226.73 due and unpaid on the last draft of $20,000 accepted by it for accommodation of Figueroa and Brittingham. All other drafts drawn by Figueroa and Brittingham by virtue of the acceptance credit of $90,000 extended to them by the Bank of America, as more fully set forth in our opinion in case L. A. No. 13645, had been paid in full. Figueroa and Brittingham, by answer and cross-complaint herein, contended that the Bank of America, acting together with said California Savings & Commercial Bank, had committed certain acts in violation of the tri-party contract entered into by Figueroa and Brittingham, Bank of America and California Savings & Commercial Bank (which contract is more fully described in our opinion in case L. A. No. 13645, *ante,* p. 261), and that the Bank of America as a result of said acts had rendered itself individually liable to them, Figueroa and Brittingham, for $27,674.44, which is the full amount of the claim against the California Savings & Commercial Bank. This amount appellants Figueroa and Brittingham sought to offset in the action herein as against the Bank of America's claim of $9,226.73, leaving a balance of $18,447.71 due them from Bank of America. The court below rendered judgment for $9,226.73 in favor of Bank of America, and denied appellants' right to recover from said bank any sum whatsoever.

The rights of Figueroa and Brittingham on the one hand and Bank of America on the other to any sum which may be paid by the insolvent California Savings & Commercial Bank depend on a stipulation in the case herein. By said

stipulation, filed prior to trial, it was agreed that upon recovery of judgment in the case herein ·(the Los Angeles County action) and payment thereof, the prevailing party should assign to the losing party all rights in the joint claim against the insolvent bank and in any judgment against said bank in the action in the county of San Diego. Until payment of the judgment in the Los Angeles County action, the prevailing· party therein should receive all sums paid by the insolvent bank up to an amount sufficient to fully pay the judgment in the Los Angeles County action.

The question to be determined on this appeal is whether the Bank of America is personally liable to Figueroa and Brittingham for the sum of $27,674.44, which represents the amount of the special deposit of $16,000 held by the California Savings · & Commercial Bank and the balance to the credit of Figueroa and Brittingham in their partnership commercial account in said bank, as more fully set forth in our opinion in L. A. No. 13645, *ante,* p. 261. Figueroa and Brittingham contend that said Bank of America is personally liable to them in the sum of $16,000 for the reason that it should have shipped currency to the California Savings & Commercial Bank, instead of crediting the general account of the California Savings & Commercial Bank with the proceeds of the check for $24,000, drawn on the El Paso, Texas, bank, and collected by the Bank of America, and thereafter permitting the California Savings & Commercial Bank to check against said account and exhaust it except for $3,401.18. As pointed out in our opinion in L. A. No. 13645, *ante,* p. 261, Figueroa and Brittingham received the balance of the proceeds of said check for $24,000, to wit, $8,000, when the security deposit was reduced from $24,000 to $16,000.

As to the balance in the partnership commercial account of Figueroa and Brittingham, the contention is that said balance represents the proceeds from the sale of cotton pledged under the exhibit A contract, which proceeds were to be held by the California Savings & Commercial Bank in lieu of the pledged cotton. Drafts drawn by Figueroa and Brittingham on the purchasers were delivered to the California Savings & Commercial Bank, and by it transmitted to the Bank of America for collection. The Bank of America, as directed, credited said general account of the California Savings & Commercial Bank with the proceeds of said col-

lections, and the California Savings & Commercial Bank in turn credited the partnership commercial account of Figueroa and Brittingham. Here, again, the contention is advanced that the Bank of America should have shipped currency to the California Savings & Commercial Bank instead of crediting its general account and permitting it to exhaust said account. If cash or currency had been shipped upon these collections and on the check for $24,000, submit appellants, the priority of Figueroa and Brittingham against the California Savings & Commercial Bank for the full amount of the claim of $27,674.44 would have been preserved.

The court below found both as to the $24,000 check and the drafts for the sale price of the cotton that the Bank of America was without notice that said items represented the deposit under the exhibit A contract or the sales proceeds of the pledged cotton. This finding alone is sufficient to relieve it from any implication of wrongdoing, and authorized it to follow the well-established practice in banking procedure of crediting the account of the California Savings & Commercial Bank with it, which was in accordance with its instructions from the California Savings & Commercial Bank. Appellants Figueroa and Brittingham contend that it conclusively appears from the evidence that the Bank of America did have full notice of the nature of theses items. In our view it must be held that the trial court's finding is sustained by the evidence.

Furthermore, irrespective of whether the Bank of America had notice, it is not liable herein to Figueroa and Brittingham. Their grievance against the Bank of America is that it did not remit the proceeds of the collections by shipment of cash or currency. But it is apparent from our discussion at length in L. A. No. 13645, *ante*, p. 261, that Figueroa and Brittingham have lost no rights of preference against the California Savings & Commercial Bank by reason of the fact that the Bank of America did not remit in cash or currency, and that their rights against the California Savings & Commercial Bank are exactly the same as if cash had been transmitted. Their right to a preference for the $16,000 special deposit has been preserved. As to the balance to the credit of the partnership commercial account in the California Savings & Commercial Bank, Figueroa and Brittingham would not have been entitled to a

preference had cash been remitted for the reason that said balance, as pointed out in our opinion in L. A. No. 13645, *ante*, p. 261, was held by the California Savings & Commercial Bank as a general deposit.

■ Appellants argue at length that the mode of remitting the proceeds of the collections was in violation of the exhibit A contract, and was done in pursuance of the exhibit B contract of guaranty between Bank of America and California Savings & Commercial Bank, of which appellants had no knowledge. Neither the exhibit A contract nor the exhibit B contract contains any provision whatsoever as to how the proceeds of the $24,000 check or drafts for the purchase price of cotton sold should be remitted. As pointed out in our opinion in L. A. No. 13645, *ante*, p. 261, the claim that the exhibit B contract constituted a fraudulent variation of the exhibit A contract is unfounded. ■ It is true that the exhibit B contract provided that the California Savings & Commercial Bank "admits and recognizes said Bank's (Bank of America) ownership and unqualified right to the possession and the disposal of any such bills of lading, shipping documents or warehouse receipts . . . " As pledgee of the security the Bank of. America did not acquire title thereto. This declaration of its rights in the security is not in accordance with law and must fail of effect, but it is a mere incidental provision. It did not establish the wrongful character of the main provisions of said contract, which was to provide a guaranty by the California Savings & Commercial Bank of the drafts accepted by the Bank of America for the benefit of Figueroa and Brittingham..

The judgment is affirmed.

Rehearing denied.